**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| CHARLES MANLEY, | ) 3:11-cv-00636-RCJ-WGC |
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| ALAN ZIMMER, et. al. | ) |
| Defendants. | ) |

Before the court is a discovery dispute relating to Plaintiff's request for production numbers 2, 9, and 10, raised in Plaintiff's Motion to Compel (Doc. # 48).[1]

**I. BACKGROUND**

**A. Summary of Claims**

This action was originally commenced by Plaintiff on July 22, 2011, in the Seventh Judicial District Court in and for the State of Nevada, County of White Pine, and was subsequently removed by Defendants. (Pet. for Removal (Doc. # 1); Pl.'s Compl. (Doc. # 1-2).) Plaintiff is a pro se, inmate litigant in the custody of the Nevada Department of Corrections (NDOC), who brings this action pursuant to 42 U.S.C.§ 1983. (Doc. # 1-2, Am. Compl. (Doc. # 112).) The events giving rise to this action took place while Plaintiff was housed at Ely State

---

[1] Refers to court's docket number. The remaining issues raised in Plaintiff's motion have been resolved either by the court or informally by the parties.

1

Prison (ESP). (*Id.*) Defendants are Glenn Hammock, Cameron Horsley, Scott Manning, Michael Rowley, Alan Zimmer, Rene Baker, and E.K. McDaniel.[2] (*Id.*)

Plaintiff alleges that on July 2, 2009, he told defendant Zimmer that he needed to be moved to another cell because his cellmate was being aggressive and violent. Plaintiff claims that defendant Zimmer did nothing, a fight occurred, and both inmates were extracted from the cell. Plaintiff states that he was then taken to a holding cell, and on the way there defendants Glenn Hammock, Cameron Horsley, Scott Manning, and Michael Rowley beat him while he was restrained such that he required hospitalization for his injuries.

The court determined on screening that based on these allegations, Plaintiff states a colorable claim that Zimmer was deliberately indifferent to a risk of serious harm to Plaintiff, as well as a colorable claim that the other defendants used excessive force against him. (Screening Order (Doc. # 8).)

Plaintiff was subsequently granted leave to amend to add a claim against defendants Baker and McDaniel based on the allegation that they failed to train, supervise or otherwise prevent the constitutional violations caused by the other defendants, and maintained an unwritten policy of covering up and failing to investigate inmate complaints of abuse. (*See* Docs. # 99, # 110, # 112.)

**B. Plaintiff's Motion to Compel (Doc. # 48)**

On October 4, 2012, Plaintiff timely filed a motion to compel discovery. (Doc. # 48.) Plaintiff served his fourth set of requests for production of documents on August 12, 2012. The requests that remain at issue are numbers 2, 9 and 10. The court held several hearings and ordered various rounds of supplemental briefing regarding Defendants objections to these

---

[2]  Rene Baker and E.K. McDaniel were added pursuant to a more recent order granting Plaintiff leave to amend his complaint. (*See* Docs. # 99, # 110, # 112.)

requests because it was concerned with Defendants' mere assertion of State regulations and code sections providing for the confidentiality of certain employment records as the basis for refusing to produce documents to Plaintiff.[3] The briefing was extensive and the court will not provide an in depth review of each filing but instead will endeavor to succinctly summarize the parties' arguments. First, however, the court will set forth the text of the requests and responses to provide some context for the arguments of the parties.

## C. Requests and Objections

*Request 2*:
> Any and all reports, investigations, claims or complaints of excessive force, assault or other misconduct of any named defendants, made by NDOC staff, inmates or any other person since January 1, 2007 to present.

*Response to Request 2*:
> Objection. Request for Production No. 2 seeks documents which are confidential pursuant to Administrative Regulation ("AR") 308, Department Staff and Applicant Records, and NAC 284.718. As such, all records of employment, including the records sought in this Request for Production No. 2 are protected as confidential employment records.

*Request 9*:
> Any and all grievances, complaints or other documents received by the NDOC and its agents concerning assault, battery, harassment, threats, retaliation, fraud, negligence, or mistreatment of inmates by each defendant and any memoranda, investigative files or other documents created in response to such complaints.

*Response to Request 9*:
> Objection. Request for Production No. 9 seeks documents and records which Plaintiff, an incarcerated person, is not permitted to possess pursuant to AR 560, Central and Institutional Record Files, AR 568, Inmate Review of Departmental Records; and AR 569, Confidentiality of Inmate Records.

*Amended Response to Request 9*:
> Objection. Request for Production No. 9 seeks documents which are confidential pursuant to Administrative Regulation ("AR") 308, Department Staff and Applicant Records, and NAC 284,718. As such, all records of employment, including the records sought in this Request for Production No. 9 are protected as confidential employment records.

///

---

[3] *See* Docs. # # 52, 53, 55, 64, 65, 67, 74, 78, 81, 85, 88, 89, 90, 91, 97, 116, 117, 118, and 120.

***Request 10*:**
    Any and all reported violations of Administrative Regulation 339 of any named
    defendants including those dismissed or reduced by plea bargain since January 1,
    2007 to present.

***Response to Request 10*:**
    Objection. Request for Production No. 10 seeks documents which are confidential
    pursuant to Administrative Regulation ("AR") 308, Department Staff and
    Applicant Records, and NAC 284.718. As such, all records of employment,
    including the records sought in this Request for Production No. 10 are protected
    as confidential employment records.

(Doc. # 52 at 5, 13-14.)

**D. Summary of Plaintiff's Argument**

Plaintiff contends that the objections to these requests were not timely served and were not accompanied by a privilege log; therefore, it is his position that Defendants waived any objections to these requests. In addition, he argues that the objections asserting that the requested documents are confidential pursuant to NDOC Administrative Regulations (ARs) and Nevada Administrative Code (NAC) sections are improper and should be overruled. Finally, he maintains that all of the documents requested are relevant to this action and reasonably calculated to lead to the discovery of admissible evidence, and the requests are not overly broad or unduly burdensome.

**E. Summary of Defendants' Argument**

    **1. Categories of Responsive Documents**

The court will first point out that in subsequent briefing Defendants clarify that documents responsive to requests 2, 9 and 10 may be contained in Defendants' personnel and employment files (maintained by NDOC), inmate grievance files (maintained by the institution where the grievance originates), the Nevada Offender Tracking Information System (NOTIS)

(electronic logs summarizing submitted inmate grievances), and investigation files maintained by the Office of the Inspector General. (Doc. # 81 at 3-6.)

Defendants eventually provided a privilege log which was filed with their supplemental briefing (Doc. # 81-1 (Ex. A) at 2-16) along with supporting declarations (Doc. # 81-1 (Ex. B) at 17-18, Doc. # 81-2 (Ex. C) at 2-16). Defendants submitted "potentially relevant" documents for *in camera* inspection. (Exhibits H, I, and J to Doc. # 81.)

Defendants have subsequently represented that there are no responsive documents contained within Defendants' personnel files. (Doc. # 81 at 6; Doc. # 81-1 (Ex. B) at 17-18 (Gabriel Decl., stating that a search of employment files revealed no responsive documents).) Thus, the only remaining sources for responsive documents are grievances filed by other inmates against the named defendants, NOTIS reports based on the logging of those grievances, and any investigation files the Inspector General may have generated as a result of the inmate grievance. (Doc. # 81 at 6.)

As to these categories of documents, Defendants maintain that they are confidential pursuant to AR 308 and NAC 284.718. In addition, they contend that the grievance files sought in Request 9 are also confidential pursuant to ARs 568 and 569.

To identify responsive documents, Defendants performed a NOTIS query for complaints against the named Defendants that would be responsive to Plaintiff's requests. (Doc. # 81 at 8.) They assert that the majority of the returned grievances are not relevant to Plaintiff's claims and of those that are related to claims of excessive force or failure to protect, none were substantiated. (*Id.*) Defendants submitted these documents for *in camera* review. (Doc. # 81 at 6-7.)

**2. Meet and Confer**

Defendants also contend that Plaintiff failed to meet and confer prior to bringing his motion as required under Federal Rule of Civil Procedure 37(a)(1) and Local Rule 26-7. (Doc. # 52 at 2-3.) Notwithstanding, Defendants do acknowledge that they discussed discovery matters with Plaintiff. (*Id.*) In his reply brief, Plaintiff represents that he did make an effort to meet and confer prior to bringing his motion. (Doc. # 55 at 3.) In addition, the court required the parties to engage in several discussions to resolve their discovery disputes.

**3. Timing of Responses**

Defendants explain the timing of service of their responses. (Doc. # 52 at 2, 15-16.) Defendants intended to provide Plaintiff with the responses at his deposition on September 13, 2012; however, counsel inadvertently failed to bring the documents. (Doc. # 52 at 2, Doc. # 52-1 (Fairbank Decl.) at 2 ¶ 6.) Plaintiff was advised that if the documents could not be provided to the institution that day, they would be served shortly thereafter. (Doc. # 52 at 2, Doc. # 52-1 at 2 ¶ 7.) The documents were apparently not provided to the institution that day and counsel waited until a copy of the hearing transcripts Plaintiff requested were received to serve the responses. (Doc. # 52 at 2, Doc. # 52-1 at 3 ¶ 9.) The responses were ultimately served on September 27, 2012. (Doc. # 52 at 2, Doc. # 52-1 at 3 ¶ 10.) Defendants represent that Plaintiff understood that the responses would be forthcoming. (Doc. # 52 at 2, Doc. # 52-1 at 3¶ 8.) They contend the de minimis delay in serving the responses does not amount to a waiver under Rule 34. (*Id.* at 15-16, Doc. # 52-1 at 3 ¶ 12.)

///

///

///

**4. The Documents are Confidential and *Turner v. Safely* Dictates that they Should Not be Produced**

Next, Defendants address the substance of their objection that the documents should not be produced because they are confidential. (Doc. # 52 at 5-8, 13-14.) As indicated above, Defendants assert that all three requests seek documents that are confidential pursuant to AR 308[4] and NAC 284.718.[5] In addition, Defendants maintain that grievance-related documentation (including documentation generated by the Inspector General) is confidential and should not be produced pursuant to ARs 568[6] and 569.[7]

Relying on *Turner v. Safley*, 482 U.S. 78 (1987), Defendants assert that courts have afforded deference to prison authorities with regard to the policies and practices of confidentiality established within the institutions. (Doc. # 52 at 5.) Defendants reason that under *Turner v. Safley*, where a prison regulation encroaches on a right of an inmate, the regulation is valid if reasonably related to legitimate penological interests. (*Id*. at 6.) They assert that NDOC's determination that employment and inmate records are confidential satisfies this test. (Doc. # 52 at 7, Doc. # 81 at 6-7, 9, 13-14.) Specifically, they contend that limiting (or prohibiting) inmate access to employment records is rationally related to safety and security concerns of the institution because the information contained in the records could contain information regarding

---

[4] AR 308 governs NDOC personnel files, and provides that they are confidential pursuant to NAC 284.718. AR 308 describes various types of files governed by this AR, including, among others, "personnel," "supervisory" and "grievance" files. These files may include disciplinary records, complaints, warnings, reprimands and grievances.
[5] Chapter 284 of the Nevada Administrative Code governs the State personnel system. The 700-series of this chapter pertains to personnel records. Section 284.718 provides that certain information is confidential, including information in "the file or record of employment…which relates to the employee's: (1) Performance; (2) Conduct, including disciplinary actions taken against the employee…" NAC 284.726 governs access to confidential records. With a few exceptions not applicable here, access to this information is limited to the employee and various authorized representatives of the State, but also "[p]ersons who are authorized pursuant to a state or federal law or an order of a court." NAC 284.718(f).
[6] AR 568.02(1) states that inmates are not permitted access to information which might endanger others, the security of the institution, or that which would impede an investigation being conducted by NDOC.
[7] AR 569 governs the confidentiality of inmate records and Defendants maintain it precludes the disclosure of these types of records.

other inmates as well as the employees themselves which could jeopardize their safety. (Doc. # 52 at 7-8, Doc. # 81 at 7.) They maintain that there are less restrictive alternative means for Plaintiff to prosecute his claims such that the limitation on his access to employment records does not impinge on his rights. (Doc. # 52 at 8, Doc. # 81 at 7-8.) They support this argument with three declarations of Deputy Director E.K. McDaniel.[8] (Doc. # 53-1 at 1-8; Doc. # 65-1 at 2-10; Doc. # 81-2 at 2-11.)

### 5. Official Information Privilege

In their original brief opposing Defendants' motion, Defendants never mention the official information privilege; instead, they insist the assertion of State regulations combined with an application of *Turner v. Safley* is sufficient to preclude disclosure of the documents. (Doc. # 52.)

In their first supplemental brief, Defendants again argue that personnel records are confidential pursuant to State regulations and provisions, and therefore they have appropriate asserted a claim of privilege and the documents are not discoverable. (Doc. # 65 at 4.) They continue to assert that the court should defer to the prison regulations concerning confidentiality pursuant to *Turner v. Safley*. (*Id*. at 4-8.) Then, Defendants represent that they are "not invoking a privilege based upon a privacy right or some other privilege. Rather, the records Plaintiff seeks are simply confidential…" (*Id*. at 15.) After they make this representation, Defendants ask the court to recognize the common law qualified official information privilege, arguing that the risks of disclosure outweigh the benefits. (*Id*. at 16.)

---

[8]   The first declaration argues that NDOC would not be able to assure the confidentiality of the information Plaintiff seeks which poses a risk to the safety and security of NDOC, its inmates, staff and the public. (Doc. # 53-1 at 5 ¶¶ 10-11.) The second declaration is nearly identical to the first. (*See* Doc. # 65-1 at 2-10.) In the third declaration, Mr. McDaniel states that he has reviewed the documents submitted *in camera* and they are each confidential pursuant to ARs 308, 568 and 569 and disclosure poses a risk to the safety and security of NDOC.

In their second supplemental brief, Defendants contend that documents such as those requested by Plaintiff have historically been deemed confidential by giving deference to NDOC ARs and the need to maintain safety and security under *Turner v. Safley* and such protections should continue. (Doc. # 81 at 3.) Next, Defendants make the argument that the official information privilege analysis should only be applied in the context of law enforcement and arrestees and pre-trial detainees. (*Id*. at 4-5.) Nevertheless, Defendants assert that they have provided "potentially relevant" documents to the court *in camera,* and should the court decide to apply the official information privilege, Defendants maintain that the legitimate safety and security risks outweigh any benefit of disclosure. (*Id*. at 5, 11-13.)

**6. Relevance**

Defendants argue that the information Plaintiff seeks is not relevant and therefore not discoverable, and Federal Rules of Evidence 401, 402 and 403 protect the documents from disclosure because their probative value is outweighed by the potential prejudice to Defendants. (Doc. # 65.)  Specifically, Defendants contend that the grievance-related documentation requested by Plaintiff is not relevant because grievances are unverified complaints made by inmates. (Doc. # 81 at 7-8.) In addition, of the potentially responsive documents that came up in their query, none of the grievances related to excessive force or failure to protect claims were substantiated, including those investigated by the Inspector General. (*Id*.)

**7. It would be too burdensome to perform an individualized search of every grievance ever filed against each named defendant to search for responsive documents**

Defendants state that grievances are maintained by the institution where the grievance originates. NDOC also maintains a record of grievances and responses in NOTIS which makes it possible to run a query to identify grievances which have been made against an NDOC

employee. (Doc. # 81-2 at 7 ¶¶12-14.) While it is possible to review every grievance to search for those made against a particular employee, Defendants contend it would require the review of thousands of grievances to determine whether a complaint is made against a particular staff member. (*Id*. ¶ 15.) If a grievance is not entered in NOTIS as a grievance against a staff member, it will not be picked up in a query for grievances against that staff member. (*Id*. ¶ 14.) Because looking through every single grievance filed at an institution where a defendant worked would be overly burdensome, Defendants only performed the NOTIS query to search for the potentially responsive documents. (Doc. # 81 at 8.)

### 8. Neither A Protective Order Nor Redaction Would Alleviate Defendants' Concerns

Finally, Defendants assert that neither a carefully crafted protective order nor redaction will alleviate the risks associated with disclosure of the information, because even if the information is redacted it is still provided to Plaintiff and he cannot be expected to be bound by the prohibition of disseminating the information. (Doc. # 81 at 12; Doc. # 81-2 at 10 ¶ 24.)

## II. DISCUSSION

**A. Scope of Discovery**

Federal Rule of Civil Procedure 34 permits a party, "within the scope of Rule 26(b)" to serve a request to produce documents. Fed. R. Civ. P. 34(a)(1)(A). "[T]he party to whom the request is directed must respond in writing within 30 days after being served. A shorter or longer time may be stipulated to under Rule 29 or be ordered by the court." Fed. R. Civ. P. 34(b)(2)(A). "[T]he response must either state that inspection…will be permitted as requested or state an objection to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B).

Federal Rule of Civil Procedure 37 allows a party to move for an order compelling the production of documents if "a party fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34."

Federal Rule of Civil Procedure 26 governs the scope of discovery in civil actions, and provides in pertinent part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).

Accordingly, the first limitation on permissible discovery is that it be relevant. *See, e.g.*, *Dowell v. W.T.* Griffin, 275 F.R.D. 613, 617 (S.D. Cal. Aug. 17, 2011) (stating that the court must address whether the requested documents are relevant before engaging in the privilege analysis). Relevance "has been construed broadly to encompass any matter that bears on, or reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppehnheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 1978 (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

The second limitation on discovery is that the matter sought be nonprivileged. In a federal question case, such as this one brought pursuant to 42 U.S.C. § 1983, privilege is determined by federal common law. Fed. R. Evid. 501; *United States v. Zolin*, 491 U.S. 554, 562 (1989); *Breed v. United States Dist. Ct. for Northern Dist.*, 542 F.2d 1114, 1115 (9th Cir. 1976) (action brought under 42 U.S.C. § 1983).

///

**B. Meet and Confer**

In their initial brief opposing Plaintiff's motion, Defendants argue that Plaintiff failed to submit a certification that he attempted to resolve this dispute informally. (Doc. # 52 at 3.) Notwithstanding, Defendants do acknowledge that the parties discussed discovery matters in this case. (*Id.*) In addition, in connection with his reply brief, Plaintiff states that he did meet and confer prior to bringing the motion. (Doc. # 55 at 3.) Moreover, the court required the parties to engage in several discussions to resolve these discovery disputes. Accordingly, the court finds that the meet and confer requirement set forth in Federal Rule of Civil Procedure 37 and Local Rule 26-7(b) has been satisfied.

**C. Waiver**

Plaintiff makes two arguments concerning a purported waiver by Defendants: (1) Defendants waived any objections to these requests by failing to timely serve the objections (Doc. # 48 at 3-5); and (2) Defendants waived any objections to these requests by failing to timely serve a privilege log (Doc. # 67 at 2).

**1. Timeliness of the Objections**

Rule 34 provides that a request for production of documents must be responded to within 30 days. Unlike Rule 33, governing interrogatories, Rule 34 does not provide that a responding party waives an objection if it is not timely stated. *Compare* Fed. R. Civ. P. 33(b)(4) and Fed. R. Civ. P. 34(b)(2)(C). Nevertheless, courts have found a waiver when a party fails to timely respond or object to a request for production of documents. *See Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) (citations omitted).

While a failure to timely object has been held to constitute a waiver of any objection, Defendants have asserted that Plaintiff agreed that Defendants could produce their responses at

his deposition, and then when counsel inadvertently forgot the responses, that they could have additional time within which to provide them. (Doc. # 52 at 15, Doc. # 52-1 (Fairbank Decl.) at 2-3 ¶¶ 6-12.) Plaintiff continually asserts a waiver occurred in his brief but does not specifically address Defendants' argument regarding his agreement to extend the time Defendants' had to produce the responses. While parties should make it a practice to obtain written confirmation of any agreement to extend a discovery obligation, the court cannot conclude a waiver has occurred under these circumstances.

### 2. Privilege Log

Turning to the issue of the privilege log:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to a protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A).

It is undisputed that Defendants did not serve a privilege log along with their responses. As far as the court can tell, the privilege log first surfaced as an exhibit to Defendants' second supplemental brief. (See Doc. # 81-1 (Ex. A) at 2-15.) The fact that this is a civil rights action brought by an incarcerated individual does not absolve Defendants of the Rule 26(b)(5)(A) requirement of serving a privilege log.

The advisory committee notes to Rule 26(b)(5) make clear that withholding otherwise discoverable materials on the basis that they are privileged or subject to the work product doctrine without notifying the other parties as provided in Rule 26(b)(5)(A) by describing the nature of the information so as to enable them to assess the claim "*may* be viewed as a waiver of the privilege or protection." Fed. R. Civ. Pro. 26(b)(5) advisory committee's comment (emphasis

13

added). The advisory committee comments also indicate that if it appears complying with the privilege log requirements presents an undue burden, a party may seek relief through a protective order. *Id*. Defendants did not move for a protective order to relieve them of the obligation of providing a privilege log.

Nonetheless, the Ninth Circuit has "reject[ed] a *per se* waiver rule that deems a privilege waived if a privilege log is not produced within Rule 34's 30-day time limit." *Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Ct. for the  Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005). Instead, the Ninth Circuit has instructed courts to look the following factors in determining whether a waiver has occurred: (1) "the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged;" (2) "the timeliness of the objection and accompanying information about the withheld documents;" (3) "the magnitude of the document production;" and (4) "other particular circumstances of the litigation that make responding to discovery unusually easy...or unusually hard." *Id*. In evaluating these factors, the court is directed to apply them "in the context of a *holistic reasonableness analysis*" and not in a "mechanistic determination of whether the information is provided in a particular format." *Id*. (emphasis added).

First, the objections themselves state that the documents sought are employment records which are confidential pursuant to AR 308 and NAC 284.718, and the documents sought pursuant to request 9 are also confidential pursuant to ARs 568 and 569. While Defendants certainly could have (and should have) produced a privilege log under Rule 34, it is not clear that much more information would have been provided that the Plaintiff or the court could have utilized to evaluate the privilege claim.

Second, while the objections were made beyond the thirty day period outlined in Rule 34, as indicated above, there seems to have been a misunderstanding as to when the responses (or objections) were to be provided and whether Plaintiff approved their late service.

Third, neither party addresses the magnitude of document production in connection with these requests. The amount of documentation provided to the court *in camera* was significant, but did not appear to be unusually large.

Finally, there are no other circumstances presented to the court which would indicate discovery was either unusually easy or unusually hard in this case, except for Defendants' assertion that they are providing discovery to an inmate and must be mindful of safety and security concerns in their production of documents.

The balance of the *Burlington* factors weigh against finding a waiver occurred under these circumstances. In addition, viewing these factors in the context of "holistic reasonableness" the court does not conclude a waiver occurred as a result of Defendants failure to timely provide a privilege log.

**D. Burdensome Argument Re: Grievances**

In their further supplemental brief, Defendants assert that to obtain grievance documents responsive to Plaintiff's requests they performed a query in NOTIS for complaints of excessive force or failure to protect against a named defendant during the requested time period. (Doc. # 81 at 8.) They note that there is a possibility that a grievance will not show up if it was not entered as a grievance against the particular employee in NOTIS. To be sure every single grievance complaining of excessive force or failure to protect against a named defendant was covered they would otherwise have to review every single grievance filed in an institution, which would be overly burdensome.

This objection was never made in their responses to the requests. Defendants could (and should) have moved for a protective order if they found the request to be overly burdensome. Nevertheless, the court will not construe the belated objection as being waived. It would not be reasonable for defendants to have to search every grievance ever filed in an institution where a defendant worked to assure they found every single such grievance asserted against a defendant. The court believes the NOTIS inquiry (as described in Doc. # 81 at 8) to be sufficient.

**E. Relevance**

As indicated above, a party may obtain discovery regarding any "matter that is relevant to any party's claim or defense….[and] [f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1).

District courts have broad discretion to determine relevancy for discovery purposes. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) (citation omitted).

Notably, Defendants did not assert an objection to requests 2, 9 or 10 based on relevancy; instead, they only asserted general comments that the documents Plaintiff seeks are not relevant in their briefing in opposition to Plaintiff's motion to compel. (*See* Doc. # 65 at 3.) Notwithstanding Defendants failure to object, relevancy is a prerequisite to obtaining discovery; therefore, the court will proceed with its analysis of the relevancy of Plaintiff's requests.

First, the court agrees with Defendants' argument that request 2 should be limited to reports, investigations, claims or complaints of excessive force and failure to protect against a named defendant from January 1, 2007, to the present. The request also seeks documents concerning "other misconduct," and the court concludes this portion of the request is vague, ambiguous, and overbroad and seeks irrelevant information. While Defendants did not assert

these specific objections, the court will limit the request as noted because Plaintiff is only entitled to the discovery of relevant information.

Second, the court finds Defendants have misapplied their relevancy argument when they state that the documents requested are not relevant because Federal Rules of Evidence 401, 402, 403, and 404 protect them from discovery. (Doc. # 65 at 17.) The rules of evidence pertain to admissibility at trial of documents proffered by a party. Admissibility is not the test for relevancy in discovery; rather, Federal Rule of Civil Procedure 26(b)(1) is clear that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

Plaintiff asserts claims under the Eighth Amendment for excessive force and failure to protect as well as supervisory liability claims against defendants McDaniel and Baker based on an alleged unwritten policy resulting in a failure to investigate these complaints. Documents involving prior complaints of excessive force or failure to protect are relevant to Plaintiff's excessive force claim where "the core judicial inquiry is…whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). Defendants' documents could provide insight as to a defendant's state of mind which Plaintiff could use to show whether the defendant was acting maliciously and sadistically. If, for example, a defendant officer had employed excessive force previously, this could have some bearing on the determination of whether the employment of force in this instance was malicious and sadistic. While this evidence may not ultimately be admissible, it is certainly relevant, and therefore discoverable.

In addition, these documents are certainly relevant to Plaintiff's claim against defendants McDaniel and Baker that they had an unwritten policy resulting in a failure to investigate these

complaints. While defense counsel argued at the hearing that these supervisory liability claims were not pending when the requests were made, the claims are now part of the action; therefore, Plaintiff is entitled to discovery of relevant documents concerning the claims. *See* Fed. R. Civ. P. 26(b)(1).

Defendants also argue that other inmates' grievances which assert complaints of excessive force or assault against the named defendants are not relevant because these are unverified complaints by inmates that might be referred to the Inspector General for further investigation. (Doc. # 81 at 7-8.) Again, while the information may not ultimately be admissible, the fact that a grievance contains an unverified statement does not mean that it is not relevant to Plaintiff's claims and it is therefore discoverable under Rule 26(b)(1).

Next, Defendants argue that the documents are not relevant because they are confidential. (Doc. # 81 at 6.) The confidentiality or privilege analysis, however, is separate from the threshold analysis of whether the requested documents are relevant under Rule 26(b)(1). If the court finds the information to be privileged (*see* discussion *infra* at II.F), however, it is not discoverable under Rule 26(b)(1).

Finally, in spite of raising the argument that the requested documents are not relevant in their briefing, Defendants eventually acknowledge that "arguably" or "potentially" relevant documents set forth in Exhibits H, I and J include complaints of excessive force or failure to protect against a named defendant from January 1, 2007 to the present. (Doc. # 81 at 6.) In fact, Defendants did submit "potentially relevant" responsive documents to the court *in camera* (*see* discussion *infra* at II.F.5.iv.b). (Exhibits H, I, and J filed *in camera* in connection with their brief at Doc. # 81.)

///

18

In sum, with the limitation imposed above, the court finds that requests 2, 9, and 10 seek relevant and discoverable information.

**F. Confidentiality/Privilege Analysis**

**1. Inmate Plaintiff's Physical Possession of Documents in His Cell**

First, the court will address Defendants' apparent request that to the extent documents responsive to his requests are disclosed to Plaintiff that he not be permitted to possess the actual documents in his cell. The court will not second guess prison administrators' determination that inmates should not be permitted to physically *possess* another inmate's grievances in his cell.

**2. Defendants' Objections**

Defendants object to requests 2, 9, and 10 and have refused to provide responsive documents on the basis that the requests seek confidential employment records protected pursuant to AR 308 and NAC 284.718. In addition, they contend that request 9 also seeks documents that are confidential pursuant to ARs 568 and 569. Plaintiff filed a motion to compel Defendants to provide responsive documents.

At the initial hearing on Plaintiff's motion, the court asked Defendants to provide supplemental briefing addressing any authority to support their position that the mere assertion of ARs and NAC is sufficient to avoid having to produce responsive documents in a federal question case. In response, Defendants submitted several supplemental briefs (to which Plaintiff was permitted to respond). Defendants generally assert that they are justified in claiming the documents are confidential under NDOC ARs based on application of *Turner v. Safley*, 482 U.S. 78 (1987). Under *Tuner v. Safley*, Defendants contend that the requirement that these documents be kept confidential is reasonably related to legitimate penological interests; therefore, the court should not order Defendants to produce responsive documents.

### 3. Misapplication of *Turner v. Safley*

Preliminarily, the court finds that Defendants' application of *Turner v. Safley*, 482 U.S. 78 (1987), to this discovery dispute is misplaced. *Turner* involved the Supreme Court's determination of the *constitutionality* of certain prison regulations where a class of inmates had challenged regulations related to inmate marriage and inmate-to-inmate correspondence. *Id*. at 81. This action does not involve a challenge to the constitutionality of the regulations providing for the confidentiality of prison employee personnel and grievance files which would trigger an analysis under *Turner*. Instead, this action centers on Plaintiff's claims of excessive force and failure to protect under the Eighth Amendment and related supervisory liability claims. The regulations concerning the confidentiality of prison employee personnel and grievance records have only become relevant in connection with a *discovery* dispute. Defendants were not able to provide, nor is the court aware, of any authority applying *Turner* to the assertion of a privilege in connection with a discovery dispute in a civil rights action brought under section 1983. Instead, the court finds this discovery dispute, like any other, is governed by the Federal Rules of Civil Procedure and case authority interpreting those rules.[9] The court will now turn to a discussion of this discovery dispute framed by those rules.

///

///

///

_____

[9]   This does not mean the court will disregard Defendants' theory of why the documents should not be produced (though misapplied under *Turner)* in its entirety. As set forth below, in analyzing an assertion of the official information privilege, the court must engage in a balancing analysis to determine whether the potential benefits of disclosure outweigh the potential disadvantages. Defendants' *Turner* analysis includes a discussion of the disadvantages of disclosure, *i.e.* the safety and security risks attendant to disclosure of these documents. The court will therefore take these arguments into account in its analysis below.

### 4. Federal Law Governs a Claim of Privilege in this Federal Question Case

"In a civil rights case brought under federal statutes questions of privilege are resolved by federal law." *Kerr*, 511 F.2d at 197; Fed. R. Evid. 501. As the United States District Court for the Northern District of California pointed out:

> It…would make no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statutes whose central purpose is to protect citizens from abuses of power by state and local authorities. If state law controlled, state authorities could effectively insulate themselves from constitutional norms simply by developing privilege doctrines that made it virtually impossible for plaintiffs to develop the kind of information they need to prosecute their federal claims.

*Kelly v. City of San Jose*, 114 F.R.D. 653, 656 (N.D. Cal. 1987). This does not mean that courts can just ignore state privilege doctrine. *See id.* ("federal courts generally should give some weight to privacy rights that are protected by state constitutions and state statutes"); *see also Boar, Inc. v. County of Nye*, 2:08-cv-01091-PMP-RJJ, 2010 WL 5070888, at * 2 (D. Nev. Oct. 5, 2010).

Federal law governing privilege has not been codified; instead, "[t]he common law — as interpreted by United States courts in the light of reason and experience — governs any claim of privilege" unless otherwise provided by "the United States Constitution; a federal statute; or rules prescribed by the Supreme Court." Fed. R. Evid. 501.

As a result, while the court may give some weight to the State confidentiality interests contained in ARs 308, 568, 569 and NAC 284.718, they do not control the determination of the applicability of privilege in this case as Defendants have argued.

### 5. Official Information Privilege

Recognizing that neither ARs 308, 568, 569 nor NAC 284.718 control whether documents are privileged in this case, the court concludes that while Defendants did not actually

invoke this privilege by name, they are essentially asserting the official information privilege over the requested documents.

### i. Federal courts recognize a qualified official information privilege

Federal courts have recognized a qualified privilege for "official information." *See Kerr*, 511 F.2d at 198. Personnel files and complaints made against government employees have been considered "official information." *Id.*; *see also Sanchez v. City of Santa* Ana, 936 F.2d 1027, 1033 (9th Cir. 1990) (citation omitted). [10] When a party asserts this privilege, courts must engage in a balancing analysis to determine whether the potential benefits of disclosure outweigh the potential disadvantages. *Id.; see also Sanchez*, 936 F.2d at 1033 (citation omitted); *Miller v. Pancucci*, 141 F.R.D. 292, 300 (C.D. Cal. 1992); *Kelly*, 114 F.R.D. at 656.

### ii. The *Kelly* Protocol

Some district courts within the Ninth Circuit (including courts in the District of Nevada) have adopted a protocol outlined in *Kelly*, 114 F.R.D. at 669-70 (hereinafter referred to as the "*Kelly* Protocol"), that parties must adhere to in asserting the official information privilege. *See e.g.*, *Duenez v. City of Manteca*, No. 2:11 cv 1820 LKK AC, 2013 WL 684654 (E.D. Cal. Feb. 22, 2013); *Carrillo v. Las Vegas Met. Police Dept.*, No. 2:10-cv-02122-KJD-GWF, 2013 WL 592893 (D. Nev. Feb. 14, 2013); *Boar,* 2010 WL 5070888, at * 3-4  (recognizing the *Kelly* Protocol but overlooking defendants' failure to submit the required declaration or affidavit); *Smith v. Casey*, No. 2:06-cv-01188-BES-GWF, 2008 WL 2570855, at *5 n. 2 (June 24, 2008); *Hampton v. City of San Diego*, 147 F.R.D. 227, 231 (S.D. Cal. 1993); *Miller*, 141 F.R.D. at 301. *Kelly* also concluded that in excessive force civil rights cases against police departments, the

---

[10]  Since the grievance documentation and investigation files requested by Plaintiff must relate to prior complaints of excessive force or failure to protect, they presumably come within the official information privilege which has been interpreted as including complaints against government employees.

balancing the court engages in is "pre-weighted in favor of disclosure." *Kelly*, 114 F.R.D. at 661 (citations omitted).

The *Kelly* Protocol is essentially this:

1) The responding party must timely file and serve an objection invoking the official information privilege by name;

2) The responding party must simultaneously submit a declaration or affidavit from a responsible official with personal knowledge who has reviewed the documentation from the agency (but not simply from the lawyer) that states that confidentiality has been maintained and specifically identify the harm that would befall the government if disclosure were ordered. In addition, the declaration or affidavit must address why a carefully crafted protective order would not alleviate the government's concerns;

3) The "burden of going forward" then shifts to the plaintiff who should evaluate the objection in "good faith" and determine whether to pursue the matter further;

4) If the plaintiff decides to pursue the matter, he or she must meet and confer with the responding party;

5) If the meet and confer efforts are unsuccessful, the plaintiff can proceed with filing a motion to compel which must describe the relevance of the requested information, and specifically discuss how the plaintiff would be harmed in the absence of disclosure;

6) The court will review the submissions, and if it determines the responding party has not met its threshold burden, it will order disclosure. If, on the other hand, the court concludes the responding party has met its threshold burden, it will order *in camera* review of the information and give the parties an opportunity to file additional supporting materials and will then make a determination on production of the disputed documents.

*Kelly*, 114 F.R.D. at 679-71.

For the most part, the cases adopting the *Kelly* Protocol involve requests for official information in civil rights actions against police officers for excessive force as well as actions against municipalities for unlawful discrimination. Some district courts, however, have applied this protocol to section 1983 civil rights actions involving conditions of confinement filed by an inmate. *See e.g., Bryant v. Armstrong*, 285 F.R.D. 596 (S.D. Cal. June 14, 2012), *report and recommendation adopted in*, 2013 WL 941521 (S.D. Cal. Mar. 11, 2013) (finding that defendants did not follow procedures, overruling privilege objection and ordering full disclosure of requested documents); *Young v. Hernandez*, Civil No. 05-CV-2375 W (CAB), 2007 WL 935594, (S.D. Cal. Mar. 26, 2007) (applying *Kelly* Protocol in wrongful death action brought by mother of deceased state prisoner). However, according to this court's review of decisions in this area, no court in the District of Nevada has applied the *Kelly* Protocol to a civil rights action involving conditions of confinement filed by an inmate under section 1983.

### iii. The court will not extend the *Kelly* Protocol to Conditions of Confinement Cases filed by Inmates Pursuant to Section 1983

The Ninth Circuit has not ruled on the propriety of the application of the *Kelly* Protocol in law enforcement cases or otherwise; it has only held that in determining whether information sought is privileged courts must employ a balancing analysis, weighing the potential benefits of disclosure against the disadvantages. *See Sanchez*, 936 F.2d at 1033-34; *Kerr*, 511 F.2d at 198.

While this court does not necessarily disagree with the application of the *Kelly* Protocol to civil rights actions asserting excessive force and unlawful discrimination against police officers and municipalities (because of the rationale espoused in *Kelly*), it declines to extend the application of the *Kelly* Protocol to inmate conditions of confinement actions brought pursuant to

section 1983 which present a number of issues distinct to these cases which would make adoption of the *Kelly* Protocol unwieldy for both the litigants and the court, as the court will now explain.

First, inmate plaintiffs in conditions of confinement actions brought pursuant to section 1983 are by and large unrepresented by counsel and untrained in the law. While a request for information such as prior complaints of excessive force may be relevant to a plaintiff's case, the court frequently is presented with discovery requests propounded by inmates that are overbroad or wholly irrelevant to the claims proceeding in a given case. [11] To require defendants in these cases to serve an affidavit in conformance with the *Kelly* Protocol simultaneously with their responses and/or objections to discovery requests would be particularly onerous under these circumstances, *i.e.*, before they are permitted to seek a protective order or assert and have the court determine objections that the request seeks irrelevant information, is overbroad and unduly burdensome.

Next, there may be circumstances where the parties may enter into a carefully crafted protective order (i.e., by not requiring the production of sensitive personal information, or redacting sensitive information) that would alleviate institutional concerns and facilitate production of relevant information. The court would prefer parties focus their efforts on coming to a resolution of a discovery dispute rather than rushing to provide the requisite declaration or affidavit within a thirty-day timeframe for responding to discovery requests (which is often further constrained due to unavoidable delays in the receipt and sending of prison mail for security reasons). Under the *Kelly* Protocol, the meet and confer process would not occur until

---

[11]  This is usually through no fault of their own as the inmates are normally not trained in the law and unfamiliar with civil discovery and are navigating the waters, pro se, as they go. This comment is not intended to serve as a basis for a motion to appoint counsel because in the court's experience most inmates do a commendable job in prosecuting their cases given their limited legal training and/or exposure to the law.

*after* the defendant(s) served their responses and/or objections and corresponding declaration. It seems that possibly agreeing to an extension of the deadline to provide responses and engaging in a meet and confer *before* the responses are to be provided *may* head off *some* unnecessary motions to compel.

Moreover, under the *Kelly* Protocol, the defendant is not given an opportunity to respond to the Plaintiff's motion before the court might order disclosure of the material. Given the safety and security interests outlined by NDOC, it makes sense to afford the institution an opportunity to oppose the Plaintiff's motion in writing before simply ordering disclosure of the documents.

Alternatively, under the *Kelly* Protocol, if the court concludes a defendant has met its threshold showing, it then orders *in camera* review of the documents and further briefing. However, allowing a defendant to respond to a plaintiff's argument *may* make *in camera* review, in the court's discretion, unnecessary. The better approach, at least in inmate conditions of confinement cases, is to allow the parties to proceed with a normal briefing schedule (*i.e.*, meet and confer, file a motion, responsive brief, and reply (supported with appropriate declarations where necessary)) and then the court may order *in camera* review if necessary.

In sum, the court will not extend the *Kelly* Protocol to conditions of confinement cases brought by inmates pursuant to section 1983. Instead, the parties should follow the protocol for objecting or responding to discovery set forth in the Federal Rules of Civil Procedure.[12] That is to say, a defendant asserting the official information privilege in a conditions of confinement case brought pursuant to section 1983 should be required to invoke the privilege in its responses

---

[12]   This is not intended to abrogate in any way the Local Rules governing scheduling and case management in actions by or on behalf of inmates under 42 U.S.C. § 1983 or *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See*, *e.g.*, Local Rule 16-1(b).

to discovery[13], and serve with its responses a privilege log which adequately states the basis for invoking the privilege (in conformity with Rule 26(b)(5)(A)) so as to enable the requesting party to thereafter challenge the asserted privilege if he or she sees fit. If the responding party finds that it would be unduly burdensome to prepare and provide a privilege log to the plaintiff, the responding party may seek a protective order. *See* Fed. R. Civ. Pro. 26(b)(5) advisory committee comment. Likewise, if a privilege log is provided and the plaintiff determines it is not in conformity with Rule 26(b)(5), the inmate plaintiff may seek appropriate relief through a motion to compel (after pursuing efforts to resolve the dispute informally).

After making a meaningful effort to meet and confer to resolve the dispute, if the plaintiff determines the objection is inappropriate or should otherwise not be sustained, he or she may file a motion to compel. Any motion to compel must demonstrate the relevance of the requested documents in accordance with Rule 26(b)(1). In addition, the plaintiff should identify what interests of the plaintiff would be harmed if the court ordered that the information not be disclosed.  In an opposing brief, the party asserting the official information privilege has the burden of showing the information requested information is privileged.

The court will note, however, that the *Kelly* Protocol does provide some useful guidance to the opposing party in this regard. As in *Kelly*, the opposing party should specifically address the disadvantages of disclosure so that the court may properly engage in a balancing of the potential benefits of disclosure against the disadvantages. The court suggests this argument be supported by appropriate declarations which establish the government or privacy interests that would be harmed if the information is disclosed and why a carefully crafted protective order will not alleviate those concerns. The plaintiff will then submit a reply brief. When the matter is fully

---

[13]  A defendant should also timely assert all other applicable objections, *i.e.* that a request seeks information that is not relevant, is overbroad or unduly burdensome.

briefed and the court has had a chance to review all of the parties' arguments, it will determine whether or not to order *in camera* review of the documents.

### iv. Application to Current Discovery Dispute

### a. Balancing

The court has undertaken an *in camera* review of the documents submitted by Defendants and will now engage in a balancing of the benefits versus disadvantages of disclosure.

While the State regulations invoked by Defendants do not govern the assertion of privilege in a federal question case such as this one, the court is mindful of the State's interest in protecting private personnel or otherwise confidential information. The court points out that, according to NDOC's own regulation, information contained within "supervisory" personnel files, which may include complaints and grievances pertaining to an employee, may be disclosed pursuant to court order. AR 308.05(1), (4). To the extent Defendants rely on ARs 568 (Inmate Review of Departmental Records)[14] and 569 (Confidentiality of Inmate Records)[15] as a basis for refusing to produce documents, the court is also mindful of NDOC's interest in the safety and security of its inmates, employees and the public (discussed in the declarations of E.K. McDaniel), and will take these interests into account in balancing the benefits versus the potential harms that would result from disclosure of this information as it has construed Defendants' objection as asserting the official information privilege.

While not specifically articulated by Plaintiff, the benefits of disclosure are that Plaintiff will be able to utilize any complaints or documents related to investigations of complaints of excessive force or failure to protect against the named defendants to support his case. This

---

[14] This AR states that inmates are not permitted access to information which might endanger others, disclose personal or confidential information of others, or hinder an NDOC investigation. AR 568.02(1).
[15] AR 569 generally states that an inmate's department records not specifically approved for disclosure are considered confidential and should not be disclosed or released to the general public or news media.

information appears particularly critical to Plaintiff's claim that defendants McDaniel and Baker operated pursuant to an unwritten policy that these types of complaints should go uninvestigated.

Conversely, Mr. McDaniel states that he has reviewed the documents submitted *in camera* and their disclosure poses a significant safety and security threat to NDOC, its inmates and staff, and the public. (Doc. # 81-2 (McDaniel Decl.) at 6 ¶ 10.) Specifically, he contends that Plaintiff's possession of the grievance records and NOTIS reports summarizing the grievances as well as his access to the information present safety and security concerns because the information contained in these records is a commodity in the prison that inmates trade on and use to gain power which can fuel disruptions and pose a danger to Plaintiff and other inmates. (*Id*. at 7-9 ¶¶ 17-18.) Mr. McDaniel represents that these records contain information regarding known members of Security Threat Groups (STGs), and allowing Plaintiff to have access to this information could place Plaintiff's safety and security at risk. (*Id*. at 8 ¶18(c).) The information could also be disseminated and used to the detriment of those inmates. (*Id*.) Additionally, Mr. McDaniel contends that Plaintiff's knowledge of the information in these records could place him at risk of violent confrontation from another inmate whose information was disclosed without his consent. (*Id*. at 8 ¶ 18(d).) Finally, Mr. McDaniel states that other inmates might attempt to harass Plaintiff in order to get him to disclose the information he has obtained about other inmates and staff members. (*Id*. at 9 ¶ 18(e).)

With respect to the investigation files generated by the Inspector General's Office that are responsive to Plaintiff's requests, Mr. McDaniel makes a similar argument for non-disclosure because the documents contain complaints made by other inmates. (*Id*. at 9-10 ¶ 21.) Moreover, Mr. McDaniel asserts that these files also include confidential information regarding the investigations, and in one instance contains information regarding an inmate's family. (*Id*. at 10

¶ 22.)

Mr. McDaniel asserts that redaction of the documents would not alleviate the institution's concerns because the sensitive information could still be obtained through deductive reasoning. (*Id*. at ¶ 24.)

The court does not find Defendants' arguments particularly compelling given the generalized nature of the claimed safety and security risks attendant to disclosure and no real discussion of how redaction could not alleviate those general concerns. At this point, based on the parties' arguments alone, it appears that the benefits of disclosure outweigh the disadvantages. Nevertheless, the court has undertaken an *in camera* review of Exhibits H, I, and J to Doc. # 81 so that it can continue its balancing approach with the benefit of viewing the specific documents at issue.

### b. *In Camera* Review

### <u>Exhibit H</u>

Exhibit H is comprised of investigation files generated by the Inspector General's Office pertaining to complaints against the named defendants for excessive force and failure to protect.

Exhibit H is divided into subparts H-1 and H-2, which are two separate investigation files generated by the Inspector General's Office, each pertaining to one of the named defendants. Exhibit H-1 encompasses documents bates labeled NDOC0118-NDOC0166. Exhibit H-2 encompasses documents bates labeled NDOC0167-NDOC0227. The court has reviewed each of these exhibits in their entirety and has determined that Exhibit H-2 does not contain any information that is relevant under Rule 26(b)(1). Therefore, it is ordered that Exhibit H-2 need not be produced for Plaintiff's review.

///

Exhibit H-1, on the other hand, contains documentation from an investigation conducted regarding the *alleged* prior use of excessive force by one of the named defendants. The matter was referred to the Inspector General's Office and an investigation was completed. The allegations were not sustained; however, the matter was also referred to defendant McDaniel for review, and as such is directly relevant to Plaintiff's claims against defendant McDaniel.

While Defendants generally state that redaction will not alleviate their concerns (*id*. at ¶ 24), the court is unconvinced that redacting the names of non-party staff members, inmates, and others, along with any other sensitive information would be insufficient. Even the specific dates could be redacted to reduce the chance that the sensitive information could be discovered through deductive reasoning as Defendants suggest. In addition, and even though Defendants did not make this request, any information contained in the Inspector General investigation documentation which reveals department procedures that could jeopardize institutional security could be redacted.

Therefore, the court orders that Plaintiff be permitted to review (but not possess) Exhibit H-1. Defendants shall file under seal a copy of the redacted version of Exhibit H-1 that Plaintiff is to receive for review in advance of providing the document to Plaintiff for review. The specific deadlines for doing so will be addressed in the conclusion section of this order, below. A motion to file the documents under seal is unnecessary as the court hereby determines that good cause exists for sealing this document because of the nature of the investigatory files in accordance with *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). Should the court find any redaction effectuated by Defendants to be inappropriate, it will schedule a hearing to discuss the matter further.

///

**Exhibit I**

Exhibit I contains the NOTIS reports relative to complaints against the named defendants for excessive force and failure to protect. Exhibit I has five subparts, with each subpart containing complaints pertaining to a particular defendant: Rowley (I-1, NDOC0228-NDOC0235); Hammock (I-2, NDOC0236-NDOC0253); Zimmer (I-3, NDOC0254-NDOC0261); Horsley (I-4, NDOC0262-NDOC0264); and Manning (I-5, NDOC0265-NDOC0294).

The court has thoroughly reviewed Exhibits I-I through I-5 and has concludes that with a few exceptions most of these documents are not relevant under Rule 26(b)(1).[16] The only documents within Exhibit I that the court concludes to be relevant are as follows: (1) Exhibit I-1, NDOC0229 (complaint of alleged threat of assault); (2) Exhibit I-1, NDOC0230 (complaint of alleged threat to safety); (3) Exhibit I-3, NDOC0260-NDOC0261 (complaint alleging no investigation of wrongdoing was being conducted); (4) Exhibit I-5, NDOC0265 (complaint alleging abuse and failure to protect); (5) Exhibit I-5, NDOC0266 (complaint alleging possible failure to protect); (6) Exhibit I-5, NDOC0268 (complaint alleging defendant posing a danger); (7) Exhibit I-5, NDOC0274 (complaint alleging a threat to safety); (8) Exhibit I-5, NDOC0284 (complaint alleging excessive force); (9) Exhibit I-5, NDOC0285 (complaint alleging excessive force); (10) Exhibit I-5, NDOC0286 (complaint alleging excessive force); (11) Exhibit I-5, NDOC0288 (complaint alleging threat of force); (12) Exhibit I-5, NDOC0289 (complaint alleging threat of force).

---

[16]  This may be because the NOTIS reports only contain a summary of the corresponding grievances and may not contain enough information to demonstrate their relevance. The corresponding grievances should be included in Exhibit J and will be reviewed by the court *in camera*.

Accordingly, the court orders that these documents be produced for Plaintiff's review (not possession), with any sensitive information redacted as was ordered with respect to Exhibit H. Defendants shall file under seal a copy of the redacted version of these documents as set forth below.

**Exhibit J**

Exhibit J contains the actual grievance documentation for these complaints. Exhibit J is subdivided into 18 parts, with each subpart containing separated grievances with complaints against the named defendants.

Exhibits J-1, J-2, J-3, J-15, J-16 and J-18 pertain to defendant Manning. Exhibits J-4, J-8, and J-12 pertain to defendant Hammock. Exhibit J-6 pertains to defendant Horsley. Exhibits J-7, J-10, and J-13 pertain to defendant Rowley.  Exhibits J-5, J-9 and J-11 do not reference any of the named defendants, nor are they otherwise relevant under Rule 26(b)(1). Exhibit J-14 does not relate to the conduct of any named defendant. Defendant Zimmer was the hearing officer but the events described in the documents have no relevance to this action. Finally, Exhibit J-17 is completely illegible.

Of the exhibits that actually pertain to the named defendants, only Exhibits J-1, J-2, J-3, J-4, J-10, J-12, J-13, J-15 are relevant under Rule 26(b)(1). The court has reviewed these documents and does not agree with Defendants' general sentiment that redaction cannot alleviate any safety and security concerns. Therefore, the court orders that these documents be produced for Plaintiff's review (not possession) after they have been properly redacted for sensitive information. As it ordered with respect to Exhibits H and I, Defendants shall file under seal a copy of the redacted version of these documents in advance.

///

33

### III. CONCLUSION

Defendants' objections to requests 2, 9 and 10 on the basis that the documents are confidential pursuant to ARs 308, 568, 569 and NAC 284.718 are **OVERRULED**.

Defendants are ordered to file **under seal** on or before **October 25, 2013** redacted versions of the following documents as specified above in advance of production of the documents for Plaintiff's review:  (1) Exhibit H-1; (2) Exhibit I-documents bates labeled NDOC0229, 0230, 0260-0261, 0265, 0266, 0268, 0274, 0284, 0285, 0286, 0288, 0289; and (3) Exhibits J-1, J-2, J-3, J-4, J-10, J-12, J-13, and J-15.

Good cause exists for sealing these documents because of the sensitive nature of the investigatory files and grievance documentation in accordance with *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).

Barring further order of the court concerning the redacted versions of the documents, Defendants shall produce these documents, in their redacted form, for Plaintiff's review on or before **November 1, 2013**. Plaintiff is **NOT** permitted to physically possess the documents in his cell but should kite the warden to review them pursuant to NDOC procedures.

**IT IS SO ORDERED**.

DATED: October 9, 2013

_____
**WILLIAM G. COBB**
**UNITED STATES MAGISTRATE JUDGE**